A. B. FARQUHAR COMPANY LIMITED *v.* MYERS *et al.*

No. 14185.   July 14, 1942.

*Tolnas & Middlebrooks,* for plaintiff in error.

*Eugene A. Epting, Carlisle Cobb* and *William T. Ray,* contra.

DUCKWORTH, Justice. ■ A judgment will become dormant and unenforceable unless entry is made on the execution by an officer authorized to levy and return the same, and such entry and the date thereof are entered by the clerk on the general execution docket within seven years after the issuance of the execution and its record. Code, § 110-1001 (2). The judgment under attack in the present action was rendered in 1929, and the execution issued thereon was recorded in 1929. To avoid dormancy under the above statute it was necessary that an entry by a proper officer be made on the execution and such entry be entered by the clerk on the general execution docket within seven years from the time the execution was recorded. This would have required such entry by the officer before or during the year 1936. Both the petition and the evidence show conclusively that no such entry was made. But an attempt to satisfy this requirement was made by having the clerk in September, 1938, enter the levy made in 1932 on page 282 of the general execution docket, wherein the execution had been recorded on page 139. It is further provided in the above Code section, that, "when an entry is filed for record more than seven years from the date of the execution, the execution shall be rerecorded with all entries thereon; but if filed within seven years, the entry shall be recorded on the original record of the execution." Thus it appears that entries made within seven years must be recorded on the original record of the execution. This requirement is not satisfied by an entry in the same execution docket but on a page far removed from the page on which the execution is recorded. The provision of the statute in this respect is met only when such entry is recorded on the original record of the execution, which means on the same page and at the same place in the execution docket where the original record appears. But the record of the levy in the present case was not made within seven years from the date of the execution. Therefore such record must be such as will satisfy the terms of the statute stated as follows: "the execution shall be rerecorded with all entries thereon." Nothing done in the present case satisfies this portion of the statute. Hence it is held

that the execution in the present case was not saved from dormancy by a compliance with the law as relates to entries and records on the execution docket.

■ The plaintiff in execution contends that the levy and return of the affidavit of illegality constituted a bona fide effort on its part to enforce collection in the courts, and thereby prevented the judgment from becoming dormant. The first act upon the part of the plaintiff in execution in connection with the illegality case shown by this record is the filing of its general demurrer on March 27, 1941, more than nine years after the illegality had been filed in court. In *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97), the plaintiff in execution instituted the proceedings in equity which this court held constituted a bona fide effort to enforce collection of the judgment, which tolled the running of the dormancy statute during the pendency of the proceeding. That suit was the action of the plaintiff and was an effort on his part to collect the judgment. Nothing there appears to show that the equity suit was abandoned, or that the plaintiff ceased to prosecute the effort to enforce collection of his judgment. As pointed out by this court in *General Discount Corporation* v. *Chunn,* 188 *Ga.* 128 (2) (3 S. E. 2d, 65), a suit filed and never formally dismissed may nevertheless not constitute a pending suit amounting to a bona fide public effort to enforce collection, sufficient to prevent dormancy. While the filing of pleadings designed to enforce collection of the judgment may constitute a new starting point for the seven-year period, if nothing further appears of record and no attempt is made to prosecute the action for a period of more than seven years, and no sufficient legal justification for the inaction appears, the dormancy statute will not be tolled by the mere existence of such pleadings. In *Fulcher* v. *Mandell,* 83 *Ga.* 715 (10 S. E. 582), it was held that where the execution was levied upon land and a claim was interposed, the prosecution of the claim in the courts for over six years was such a public act on the part of the plaintiff as would prevent the statute of limitations from running pending the litigation. That ruling does not mean that the mere existence of a claim would toll the statute, but, as there stated, "the prosecution of this claim in the courts" constituted such public effort on the part of the plaintiff as would toll the statute. The decision in *Ryals* v. *Widencamp,* 184 *Ga.* 190 (190 S. E. 353),

concurred in by only four Justices, two dissenting, held that, the levy there having been arrested by the filing of a claim, the claimant would not be heard to assert that pending such levy and the trial of such claim the statute of limitations continued to run against the fi. fa. It does not appear that the plaintiff in fi. fa. was inactive during the pendency of the claim, or that such plaintiff failed to take every opportunity to have the claim disposed of. That decision recognizes the construction placed upon the dormancy statute in a claim case by this court in *Beck* v. *Hamilton*, 113 *Ga.* 273 (38 S. E. 754). In the latter case the claimant died during the pendency of the claim, and it was held that because the plaintiff in execution thereafter allowed more than seven years to elapse before taking steps to make parties or to have an entry made upon the execution, the execution became dormant. It appears that the earlier decisions wherein it was stated that the act of the plaintiff in execution in prosecuting a claim case constituted a public effort to enforce collection which would toll the statute have been misconstrued to mean that the mere pendency of the claim without any action on the part of the plaintiff in execution was of itself sufficient to toll the statute. Speaking of this question, this court in *Beck* v. *Hamilton*, supra, said: "It is true that the decisions of this court have shown considerable liberality in holding that any effort on the part of a plaintiff in execution to prosecute his fi. fa. will relieve it from the operation of the dormant-judgment act. We are not, however, aware of any case which goes to the length of holding that where, as in the present case, the conduct of the plaintiff in execution is characterized by absolute and voluntary inaction for more than seven years, dormancy of the judgment will be prevented by the mere fact that a claim has been interposed." The opinion goes on to analyze some of the earlier opinions, and then says: "We think that this court has gone quite far enough in ruling that litigations under certain circumstances suspend the operation of the dormant-judgment act, especially in view of the plain letter of the law embodied in section 3761 of the Civil Code [now § 110-1001]." It is there pointed out that the pendency of a claim to property levied on does not prevent the plaintiff from obtaining an order of court to have his levy withdrawn and the execution levied on other property; to which we might add that in the present case no reason appears why the plaintiff in execution

could not have had the execution with the entry of levy thereon recorded in conformity with the statute. Indeed the record shows that the execution was made available to the plaintiff, and that instead of making a valid record an insufficient record was made. Therefore the execution became dormant, because there was neither a recording of the same nor a bona fide public effort to enforce its collection in the courts, as required by statute to prevent its becoming dormant.

But the plaintiff in error contends that since the defendants in error acquired their lien after the levy and during the pendency of the illegality, they were charged with notice and were bound by the judgment sustaining the general demurrer to the affidavit of illegality. It is provided in the Code, § 37-117, that a pending suit shall be notice of an equity or claim to all the world from the time it is filed and docketed, and that "if the same shall be duly prosecuted . . one who purchases pending the suit shall be affected by the decree rendered therein." While the quoted provision of the section provides that if the suit is duly prosecuted a purchaser during the pendency of that suit will be affected by the judgment therein, it means more,—if the suit is not prosecuted, one who purchases after its filing will not be affected by any judgment rendered therein. *Tinsley* v. *Rice,* 105 *Ga.* 285 (31 S. E. 174); *Bridger* v. *Exchange Bank,* 126 *Ga.* 821 (5, 6, 8, 10) (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118); *General Discount Cor.* v. *Chunn,* supra. The record in the present case showing that for a period of more than nine years after the illegality proceeding was filed in court the plaintiff in fi. fa. made no effort whatever to prosecute or dispose of the same, it must be held that the illegality proceeding was not "duly prosecuted," and hence the defendants in error, purchasers during the pendency thereof, are not affected by the judgment rendered therein. For the reasons above stated, the petition was not subject to general demurrer, and the evidence demanded the verdict rendered. There is no merit in any of the grounds of exception.

*Judgment affirmed. All the Justices concur.*