38715. CRONIC v. CHAMBERS LUMBER COMPANY.

MARSHALL, Justice.

Chambers Lumber Company obtained a $6,842.77 judgment against W. H. Cronic in the Hall Superior Court on July 19, 1960. A writ of fi. fa. was issued on the judgment on November 16, 1960; however, there was no levy of execution. On July 5, 1967, and May 8, 1974, Chambers entered a written notice on the general execution docket of Hall County that there had been a bona fide public effort to enforce the judgment but that no property of W. H. Cronic was found in Hall County.

W. H. Cronic subsequently died. On May 4, 1981, W. H. Cronic's son, Harrison Cronic, filed the present petition in equity to restrain Chambers from enforcing the 1960 judgment on the ground that it had become dormant. The trial court considered an affidavit executed by E. H. Chambers, who was an officer of Chambers Lumber Company, and the court ruled that Chambers had prevented the judgment from becoming dormant through the bona fide public effort to enforce it and entry of notice of this on the general execution docket. In addition, the trial judge ruled that it would be inequitable to enjoin enforcement of the judgment, since Chambers had delayed enforcement of the judgment at W. H. Cronic's request. The trial court also noted some question concerning the standing of Harrison Cronic to bring this suit, since he has not been appointed administrator of his father's estate.

1. "[U]nder a number of rulings of the Supreme Court, ... there are two ways by which a judgment, rendered when this one was, could be prevented from becoming dormant: first, by proper entry thereon every seven years by an officer authorized to execute and return the

same and the recording of the said entry on the execution docket of the court in which the judgment was obtained, with the date of recording entered by the clerk, . . . or 'by a bona fide public effort on the part of the plaintiff in fi. fa. to enforce his execution in the courts of the country at such times and periods that seven years (would) not elapse between such attempts or between such an attempt and a proper entry.' *Hollis v. Lamb,* 114 Ga. 745, 746 (40 SE 751). The first of these methods is based upon the express language of the statute, the second grows out of an equitable construction thereof." *First Nat. Bank v. McCaskill,* 27 Ga. App. 391, 392 (108 SE 819) (1921).

Since the decision of the Court of Appeals in *First Nat. Bank v. McCaskill,* supra, there have been two amendments to the Dormancy of Judgments Statute. Code § 110-1001 (Ga. L. 1823, Cobb, 498. Ga. L. 1884-1, p. 95; 1910, p. 121; 1920, p. 81; 1955, pp. 417, 418; 1965, pp. 272, 273). Ga. L. 1955, pp. 417, 418 added the requirement that specific notice of a bona fide public effort to enforce the execution be filed with the clerk and entered on the general execution docket. Ga. L. 1965, pp. 272, 273 imposed the requirement that "when an entry on the execution or a written notice of public effort is filed for record, the execution shall be recorded or rerecorded on the general execution docket with all entries thereon."

However, it has been held that the purpose of the Dormancy of Judgments Statute is not to confer any benefit on the judgment debtor, but rather to prevent judgments which have been paid from being collusively kept open and made the instruments of fraud on innocent purchasers and bona fide creditors. *Lockwood v. Barefield,* 7 Ga. 393 (1849); *Columbus Fertilizer Co. v. Hanks,* 119 Ga. 950 (47 SE 222) (1904) (Turner, J., dissenting). "The principle arrived at seems to be that, as between the plaintiff and defendant, any record facts which go to show that the judgment creditor was active, particularly if his want of activity during any of the time was caused by the act of the defendant, would operate to save the judgment from the operation of the [Dormancy of Judgments Statute], such as claiming money in court, . . . and any *official action* upon the public dockets so as to notify the world that the plaintiff claimed that his judgment was subsisting . . ." *Nelson v. Gill,* 56 Ga. 537, 538 (1876).

2. It is true that under one of the provisions of the Dead Man's Statute, in any suit instituted or defended by the personal representative of a deceased person, the opposite party is not permitted to testify in his favor against the deceased person as to the transactions or communications therewith. Code § 38-1603 (1). Although the substantive provisions of the Dead Man's Statute were repealed in 1979, the 1979 amendment does not apply to transactions or occurrences which took place prior to July 1, 1979. See Ga. L. 1979,

p. 1261, § 2. However, as held in *Freeman v. Saxton,* 240 Ga. 309 (1) (240 SE2d 708) (1977), an heir at law of an intestate is not considered a personal representative of the intestate within the meaning of the previously cited provisions of the Dead Man's Statute.

For the foregoing reasons, we hold that the judgment should be affirmed. We, therefore, find it unnecessary to address the question as to standing.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 8, 1982 —
REHEARING DENIED JULY 22, 1982.

Harrison P. Cronic, *pro se.*
*Joe K. Telford,* for appellee.